UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGEL LEARNING, INC., | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:08-cv-01259-LJM-JMS |
| | ) | |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING | ) | |
| COMPANY, | ) | |
|     *Defendant*. | ) | |

### ORDER

Presently before the Court is Plaintiff ANGEL Learning, Inc.'s ("ANGEL") Motion to Compel. [Dkt. 144.]

#### BACKGROUND

This case involves claims, and counterclaims, arising from a contract that neither party believes the other fulfilled. Defendant Houghton Mifflin Harcourt Publishing Company's ("HMH") predecessor engaged ANGEL to design a computer software program known as ThinkCentral 2, an online complement to student textbooks. [*See* dkt. 92-4.] As is relevant here, HMH says that ThinkCentral 2 didn't live up to the contractual specifications by a wide margin and, consequently, that HMH has no further obligation to pay ANGEL anything else under the contract. HMH has also counterclaimed against ANGEL for the return of the development fees that it has already paid under a theory of restitution, as an alternative to its claim for contract damages. [Dkt. 79 at 17.]

As narrowed following oral argument, [*see* dkt. 203], the only discovery dispute remaining in the Motion to Compel concerns the propriety of ANGEL's Interrogatory Numbers 18 and 21, which concern the extent to which HMH was able to use ThinkCentral 2 despite its alleged deficiencies:

> <u>INTERROGATORY NO. 18</u>:  Did HMH, directly or indirectly, charge customers for the right to use ThinkCentral 2?  If so, how much was this charge for each customer who paid such a charge?
> ….
> <u>INTERROGATORY NO. 21</u>:  How many more of each service or product [that was bundled with access to ThinkCentral 2] did HMH sell for the 2008-09 school year than it did for the 2007-08 school year?

[Dkt. 158-2.]

## DISCUSSION

The Federal Rules of Civil Procedure contain liberal discovery provisions, normally permitting discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. Pro. 26(b)(1).  For good cause shown, the scope of discovery can extend to anything "relevant to the subject matter involved in the action."  *Id.*  Consistent with the Federal Rules' promise of a "just, speedy, and inexpensive determination of every action," Fed. R. Civ. Pro. 1, however, the Court must limit otherwise proper discovery in several circumstances.  Among them, the Court must not permit "discovery…if it determines that…the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," Fed. R. Civ. Pro. 26(b)(2)(C)(iii).

Here, HMH objects that Interrogatories are improper because they seek irrelevant information under New York substantive law (which governs this diversity action) and, to the extent that any responsive information were technically relevant, compiling it would subject HMH to an undue burden.

### A. Relevance

Invoking the principle that "[t]he object of restitution is to restore the status quo ante—to put the parties back into the position they were in before the unjust enrichment occurred," *New York City Econ. Dev. Corp. v. T.C. Foods Import & Export Co., Inc.*, 819 N.Y.S.2d 849 (table), 2006 WL 1132350, *3 (N.Y. Sup. Ct. 2006), ANGEL contends that it should be permitted to discover whether refunding the software development fees—without also deducting HMH's increased profit attributable to the use of the software—would make HMH better off than HMH was before the software development contract. That information is, it says, exactly what the two Interrogatories quoted above attempt to uncover.

For its part, HMH argues that the Interrogatories seek irrelevant information under New York restitution jurisprudence. That jurisprudence, HMH says, provides that when a vendor to a fails to perform under the contract, the payor is entitled to a full refund of any moneys that it paid to the vendor, less only direct benefit that it received from the partial performance of the breaching party. *See Ajettix Inc. v. Raub*, 804 N.Y.S.2d 580, 593 (Sup. Ct. 2005) ("In practice, where the defendant has sold something to the plaintiff for money, the steps leading to return to the status quo are streamlined: generally the plaintiff must tender the subject of the sale to the defendant and the defendant must tender to the plaintiff the sale price plus interest, minus whatever direct value the plaintiff has received from the transaction." (quotation omitted)). [Dkt. 202 at 1-2.] And, the argument continues, assuming that any portion of its sales could be attributable to the bundling of "free" access to ThinkCentral 2 to its end customers, the benefit to HMH would be indirect, in the sense that the benefits only resulted from independent transactions with third parties. [*Id.* (citing *Randall v. Loftsgaarden*, 478 U.S. 647 (1986) ("The phrase 'direct product' means that which is derived from the ownership or possession of the

property without the intervention of an independent transaction by the possessor." Restatement of Restitution § 157, Comment b (1937).").]

But HMH's view of restitution conflicts with the general principles of restitution, as they are set forth in the Restatement of Restitution:

> A person under a duty to another to make restitution of property received by him or of its value is under a duty
>
> > (a)  to account for the direct product of the subject matter received while in his possession, and
> >
> > (b)  to pay such additional amount as compensation **for the use of the subject matter** as will be just to both parties in view of the fault, if any, of either or both of them.

Restatement of Restitution, § 157(1) (1937) (emphasis added). Thus, to the extent that *Ajettix* actually stands for the proposition that restitution can never require one party to pay for having had the use of the property of another, that proposition reflects a minority view. Inasmuch as HMH has been unable to locate an opinion adopting that minority view from the Court of Appeals of New York, whose views on the matter the District Judge must predict, *e.g.*, *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004), the Magistrate Judge finds that the liberal standard applicable to discovery relevance permit ANGEL to inquire about HMH's beneficial use of the allegedly worthless ThinkCentral 2. Accordingly, HMH's relevance objections to Interrogatories 18 and 21 are overruled.

### B.  Undue Burden

HMH also argues that it would be unduly burdensome to respond to the Interrogatories, stating, in a conclusory fashion, that HMH it would need up to four weeks to gather the responsive information. [*See* dkt. 203 at 2.] But that assertion doesn't constitute evidence. *See, e.g.*, *Box v. A&P Tea Co.*, 772 F.2d 1372, 1379 n.5 (7th Cir. 1985) (explaining that "arguments in briefs are not evidence"). It also contradicts this Court's general experience with sophisticated

business entities like HMH, which can usually generate electronic queries to determine the sales price of their products (Interrogatory 18)[1] or their products' year-over-year sales (Interrogatory 21). In the absence of evidence to support those unusual claims, the Court won't accept them. *See, e.g.*, *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 10 (D. D.C. 2007) ("[T]he Court only entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden. The responding party cannot just merely state in a conclusory fashion that the requests are burdensome." (internal quotations and citations omitted)).

Because HMH hasn't provided sufficient evidence to permit the Court to compare the marginal value of the requested discovery to the burden associated with obtaining it, the Court overrules HMH's undue burden objections.

## CONCLUSION

The Motion to Compel is **GRANTED**. HMH shall answer ANGEL's Interrogatory Numbers 18 and 21 within **fourteen days**, or within whatever other amount of time the parties stipulate in writing. With respect to Interrogatory Number 18, HMH's response shall include a "yes" or "no," subject to whatever other additional explanation may be appropriate.

05/31/2010

Jane Magnus-Stinson<br>
United States Magistrate Judge<br>
Southern District of Indiana

---

[1] The Court doesn't interpret Interrogatory 18 to ask HMH to calculate indirect costs attributable to ThinkCentral 2 if HMH didn't actually make those calculations when making pricing decisions for its products.

- 6 -

**Distribution via ECF only:**

Sean P. Burke
BARNES & THORNBURG LLP
sean.burke@btlaw.com

Michael T. McNally
ICE MILLER LLP
mcnally@icemiller.com

Scott E. Murray
BARNES & THORNBURG LLP
smurray@btlaw.com

Irwin B. Schwartz
BUSINESS LITIGATION ASSOCIATES, P.C.
ischwartz@business-litigation-associates.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com