UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGEL LEARNING, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-1259-LJM-DKL |
| | ) | |
| HOUGHTON MIFFLIN HARCOURT | ) | |
| PUBLISHING COMPANY, | ) | |
| Defendant. | ) | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's, ANGEL Learning, Inc. ("ANGEL"),

motion for Partial Summary Judgment on Its Claim for Fraud [Dkt. No. 263] and

Defendant's, Houghton Mifflin Harcourt Publishing Company ("HMH"), Motion for Summary

Judgment [Dkt. No. 266]. Both motions concern legal claims ANGEL asserts in its Second

Supplemental Complaint. Dkt. No. 150-1. For the following reasons, the Court **DENIES**

ANGEL's motion and **GRANTS** HMH's motion.


## I. BACKGROUND

This matter has been pending before the Court since September 2008. As a result,

a complete recitation of the factual and procedural background leading to the currently

pending motions would be unwieldy. Accordingly, the Court will recite only those facts and

procedural background directly pertinent to the motions at hand. A more complete

recitation of the facts of this case is available in the Court's Order issued on August 12,

2010, docket number 248 ("August 12 Order").

The instant suit is predicated on a contract entered into by the parties ("LMS Agreement") that concerns certain software ANGEL was to provide to HMH ("*ThinkCentral 2*"). On January 9, 2009, HMH sent ANGEL a letter in which HMH purported to terminate the LMS Agreement due to ANGEL's alleged breach of warranties contained within the LMS Agreement ("January 9 Letter"). Dkt. No. 265-2. HMH informed ANGEL that it disputed ANGEL's claim that it owed ANGEL any fees. *Id.* HMH invoked Section 7.8 of the LMS Agreement, which provides in pertinent part: "To the extent that any payment is subject to a good faith dispute, it may be paid into escrow pending resolution of the dispute and while it is in escrow pending such resolution, the other party may not terminate [the LMS Agreement] based upon that escrowed amount." Dkt. No. 14-1 at 28. Citing Sections 18.2 and 7.8 of the LMS Agreement, the January 9 Letter asserts that ANGEL was required to continue to support *ThinkCentral 2* until "the later of June 2009 or when HMH complet[ed] its migration of its learning management system to a new platform." Dkt. No. 265-2.

ANGEL requested that HMH confirm that it had made the promised deposit, and HMH's counsel assured ANGEL that HMH had deposited $2,004,000 into a Bank of America account ("Bank of America Account") and provided ANGEL with the account number and the funding date. Dkt. No. 265-3. ANGEL continued to support *ThinkCentral 2*. Dkt. No. 265-4. On October 15, 2009, HMH informed ANGEL that on October 14, 2009, HMH withdrew the $2,004,000 that it had deposited into the Bank of America Account. Dkt. No. 265-5.

The Bank of America Account was an existing checking account HMH maintained that was renamed "Escrow Pursuant to LMS Agreement Section 7.8 prior to the $2,004,000 deposit. Dkt. No. 265-6 at 16. It was never managed by an escrow agent. *Id.* at 11.

In its August 12 Order, the Court granted ANGEL leave to supplement its Complaint. Dkt. No. 248. In so doing, ANGEL added legal claims premised on HMH's alleged fraud in depositing the disputed fees into the Bank of America Account. Dkt. No. 150-1. ANGEL moves now for summary judgment on its fraud claim against HMH. Dkt. No. 263. HMH, in turn, moves for summary judgment on ANGEL's fraud and promissory estoppel claims and ANGEL's request for injunctive relief. Dkt. No. 266.

The Court includes additional facts below as necessary.


## II. <u>STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials

showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear

4

the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. <u>DISCUSSION</u>

Currently pending before the Court are cross motions for summary judgment on ANGEL's fraud claim against HMH. HMH also presents arguments for summary judgment in its favor on two other issues: ANGEL's promissory estoppel claim and its request for injunctive relief. The Court will first consider the parties' arguments addressing the fraud claim, and then it will turn its attention to the issues remaining in HMH's summary judgment motion.

## A. FRAUD

In Indiana, common law fraud consists of "(1) a material representation of past or existing facts which (2) was false (3) was made with knowledge or reckless ignorance of its falsity (4) was made with intent to deceive (5) was rightfully relied upon by the complaining party and (6) proximately caused injury to the complaining party." *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008).

ANGEL asserts that HMH knowingly misrepresented an existing fact when it stated that it had deposited $2,004,000 into an escrow account pending the resolution of the parties' dispute. Further, ANGEL asserts that it detrimentally relied on HMH's statements by ceasing consideration of its option to terminate HMH's use of ANGEL's software. HMH, on the other hand, asserts that ANGEL's fraud claim must fail as a matter of law because HMH made no material misstatement of fact and ANGEL suffered no harm because HMH

had properly terminated the LMS Agreement prior to making the deposit in the Bank of America Account.

The Court turns first to the question of whether HMH made a material misrepresentation of a past or existing fact. "[E]xpressions of opinion cannot be the basis for an action in fraud." *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992). Additionally, the breach of a promise to act in the future or abstain from some act in the future will not support a fraud theory. *Sees v. Bank One*, 839 N.E.2d 154, 164 (Ind. 2005); *Am. Heritage Banco*, 879 N.E.2d at 1115 (stating that "actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed").

In the instant case, ANGEL alleges that HMH's statement on January 20, 2009 that it deposited $2,004,000 into an escrow account pursuant to Section 7.8 of the LMS Agreement is a material misstatement of fact because HMH actually deposited the funds into a regular checking account. HMH asserts that, instead of affirmatively misstating a fact, it simply interpreted the term "escrow" differently than ANGEL. The touchstone for determining whether HMH did make a material misrepresentation with regard to the deposit must be Section 7.8 of the LMS Agreement because it is undisputed that the entire purpose for the deposit was to comply with that contractual provision. As discussed in the August 12 Order, the law of New York applies to the interpretation of the LMS Agreement. Dkt. No. 248 at 12-13. Accordingly, the word "escrow" must be given its plain meaning. *See Brooke Grp. v. JCH Syndicate*, 663 N.E.2d 635, 638 (N.Y. 1996) ("The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning"). "An escrow is a written agreement that imports a legal obligation to deposit an

6

instrument or property by the promisor with a third party to be kept by the latter in capacity of depositary or escrowee until the performance of a condition or the happening of an event, which then is to be delivered by the escrow agent to the promisee." *Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (N.Y. Sup. Ct. 1994), *aff'd* 642 N.Y.S.2d (N.Y. App. Div. 1996); *see also Blacks Law Dictionary* 230 (Pocket Ed. 1996) (defining escrow as "a . . . property delivered by a promisor to a third party to be held by the third party . . . until the occurrence of a condition at which time the third party is to hand over the . . . property to the promisee"). Further, "[t]he purpose of an escrow is to assure the carrying out of an obligation already contracted for an in furtherance of the obligation the promisor deposits money, goods, or documents to an escrow agent who agrees to part with it only on a specified condition." *Id.* Indeed, Section 7.8 of the LMS Agreement states that payment of funds subject to a good faith dispute into escrow guarantees that the other party may not terminate the LMS Agreement based upon the escrowed amount. Dkt. No. 14-1 at § 7.8. Instead of depositing the funds into an escrow account as definied above, HMH deposited the funds into an account over which it had unilateral control. Under the plain language of the LMS Agreement, it did not deposit the funds into "escrow." Accordingly, when HMH stated that it deposited the funds into the escrow account pursuant to Section 7.8 of the LMS agreement, it did mischaracterize its actions. Neither party disputes that such a misstatement is material.

HMH argues that ANGEL has not met its burden of proving that HMH intentionally misrepresented the nature of its deposit. ANGEL did point the Court to the testimony of HMH's 30(b)(6) witness who stated that HMH considered using an escrow account managed by an agent, but determined such an account was not necessary and, further,

that HMH had used escrow accounts in other situations, that it does not consider an escrow account as the same as a checking account, and that it had never heard of an escrow account that was not managed by an escrow agent. Dkt. No. 281-3 at 3-4, 5-6, 9-10. Considering the plain and accepted meaning of the term "escrow" and the evidence offered by ANGEL, the Court concludes that HMH did knowingly misrepresent the nature of the account into which it deposited the disputed funds with the intent to deceive ANGEL as to HMH's adherence to the terms of Section 7.8 of the LMS Agreement. The parties do not dispute that ANGEL had the right to rely on HMH's statements regarding the deposit.

Finally, in order to prevail on its fraud claim, ANGEL must prove that it suffered damages proximately caused by its reliance on HMH's statement. ANGEL argues that because of HMH's statement that it deposited the funds into an escrow account pursuant to Section 7.8 of the LMS Agreement it ceased consideration of terminating the LMS agreement and lost the settlement leverage that could have been gained by threatening to terminate HMH's use of *ThinkCentral 2*. Further, ANGEL argues that it was harmed because of the loss of security in the event the dispute is resolved in its favor. The Court will address ANGEL's three distinct damages theories in turn.

First, the Court must address the consequences of its August 12 Order on the instant motions. In its August 12 Order and subsequent Order on ANGEL's Motion to Reconsider [Dkt. No. 262], the Court determined that in its January 20 Letter, HMH properly terminated the LMS Agreement. Dkt. No. 248 at 16-18. However, the Court left the issue of whether Section 18.2 of the LMS Agreement was triggered for trial. *Id.* at 20-22. Accordingly, the issue of whether, after its receipt of the January 20 letter, ANGEL was contractually required to continue supporting *ThinkCentral 2* remains unresolved. HMH

argues that because it had already properly terminated the LMS Agreement by the time it made the statement regarding the deposit, any damages ANGEL predicates on terminating or threatening to terminate the LMS Agreement fail as a matter of law. The Court agrees that ANGEL did not detrimentally rely on HMH's representations to the extent ANGEL bases its damages on losing the settlement leverage of terminating the LMS Agreement because the LMS Agreement had already been properly terminated. *See* Dkt. No. 248 at 16-18.

To the extent that ANGEL's asserted damages are not predicated on terminating the LMS Agreement but instead concern ANGEL's continued support of *ThinkCentral 2* without counter-performance by HMH, the question is more complicated. The Court has left for trial the question of whether ANGEL had a duty under Section 18.2 of the LMS Agreement to continue to support the software. However, ANGEL has not put forth any evidence to indicate that it would have actually terminated its support of *ThinkCentral 2*, had it not been for ANGEL's reliance on HMH's statements. Instead, ANGEL has indicated that it stopped considering whether it would terminate its support of the LMS Agreement, and presumably its support of *ThinkCentral 2* in reliance on HMH's statements regarding its deposit. The cessation of consideration of termination as a litigation strategy is too attenuated and speculative for the Court to conclude that it is detrimental reliance sufficient to support ANGEL's fraud claim. *See Wolcott v. Wise*, 130 N.E. 544, 546 (Ind. App. 1921); *see also Lycan v. Walters*, 904 F. Supp. 884, 897 (S.D. Ind. 2008) (McKinney, J.) (noting that in order to support a fraud claim the damage must be proximately caused by the material misstatement).

ANGEL's final asserted item of damage, its loss of security in the event that it wins its claims in this lawsuit, is also insufficient to support its fraud claim because it does not relate to any actions ANGEL took in reliance on HMH's statements. Indeed, if damage does result from the loss of ANGEL's security, it would be caused by HMH defaulting on a judgment in this case, not any fraud. Because ANGEL has not presented evidence of detrimental reliance proximately caused by HMH's statements regarding its deposit, it's fraud claim fails as a matter of law. *See id.* Accordingly, ANGEL's partial Motion for Summary Judgment is **DENIED**.

## B. PROMISSORY ESTOPPEL

In its Second Supplemental Complaint, ANGEL makes a claim for promissory estoppel premised on HMH's deposit in the Bank of America Account. HMH moves for summary judgment on ANGEL's promissory estoppel claim, arguing that HMH's action was controlled by a written contract and, therefore, not susceptible to a promissory estoppel theory.

"[A] claim of promissory estoppel will permit recovery only where no contract in fact exists." *Comentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1098 (N.D. Ind. 2011) (Simon, C.J.) (citing *Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008)). Indeed, "if the promises cited by [ANGEL] are founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwanted surplusage." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005) (Tinder, J.) (citing *Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 932 (Ind. Ct. App. 2003)). ANGEL argues that because the LMS Agreement did not

obligate HMH to deposit the disputed funds into escrow, the fact that HMH acted pursuant to the LMS Agreement does not render ANGEL's promissory estoppel claim futile. ANGEL cites no authority for its position. The cases are clear that where "there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999). In the instant case, HMH expressly acted pursuant to an option provided in the LMS Agreement, and its failure to conform to the terms of the LMS Agreement may constitute a breach of the LMS Agreement. Accordingly, if there is a remedy for ANGEL to be had, it is in contract, not equity. Therefore, ANGEL's promissory estoppel claim fails.

## C. INJUNCTIVE RELIEF

ANGEL also seeks an order from the Court requiring HMH to deposit $2,004,000 into a true escrow account pending the resolution of the parties' dispute. However, HMH argues that monetary damages are available for all of ANGEL's claims, negating the necessity for the extraordinary remedy of an injunction. ANGEL presents no evidence to rebut HMH's argument. Accordingly, the Court concludes that ANGEL is not entitled to the injunctive relief requested in its Second Supplemental Complaint. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that on summary judgment "the plaintiff can no longer rest on the pleadings").

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** plaintiff, ANGEL Learning, Inc., Motion for Partial Summary Judgment on its Claim for Fraud [Dkt. No. 263] and **GRANTS** defendant's, Houghton Miffllin Harcourt Publishing Company, Motion for Summary Judgment [Dkt. No. 266].

IT IS SO ORDERED this 14th day of September, 2011.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

Sean P. Burke
BARNES & THORNBURG LLP
sean.burke@btlaw.com

Michael T. McNally
ICE MILLER LLP
mcnally@icemiller.com

Scott E. Murray
BARNES & THORNBURG LLP
smurray@btlaw.com

Irwin B. Schwartz
BUSINESS LITIGATION ASSOCIATES, P.C.
ischwartz@business-litigation-associates.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com